IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



WILLIAM E. HARTFIELD,            §
                                 §
        Petitioner,              §
                                 §
v.                               §      No. 4:12-CV-851-A
                                 §
RICK THALER, Director,           §
Texas Department of Criminal     §
Justice, Correctional            §
Institutions Division,           §
                                 §
        Respondent.              §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, William E. Hartfield, a state prisoner currently incarcerated in Palestine, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ), respondent.  After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I.  Procedural History

On December 12, 2007, a jury found petitioner guilty of arson with intent to damage a habitation in Criminal District Court Number Four of Tarrant County, Texas, Case No. 1068633R,

petitioner pleaded true to three prior felony convictions, and the trial court assessed his punishment at twenty-two years' imprisonment.  (State Habeas R. at 247[1])  Petitioner appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review.  (*Id.* at 249-57)  *Hartfield v. State*, PDR No. 128-09.  Petitioner also sought postconviction state habeas corpus relief, to no avail.  (*Id.* at cover)

The state appellate court set forth the "Background" of the case as follows:

> Residents of the Shadow Creek Apartments noticed a strong chemical odor in their apartments and called 911.  Firefighters noticed liquid leaking from the ceiling in an upstairs unit and found a gasoline-filled balloon in the attic.  Apartment 2009, which was leased to Hartfield, was the only apartment with access to the attic.  Firefighters obtained a search warrant to search that unit and saw some insulation and ceiling material on the carpet by the entrance to the attic. They also found more insulation and ceiling material and a package for balloons in Hartfield's trash can. Inside the attic, firefighters found another gasoline-filled balloon, a charred, partially burned sock, and charred insulation material.  Ultimately, Hartfield was charged with arson.

(State Habeas R. at 250)

---

[1]"State Habeas R." refers to the state court record of petitioner's state habeas application no. WR-73,686-03.

## II.   Issues

Petitioner raises two grounds for relief, in which he alleges ineffective assistance of trial counsel (ground one) and prosecutorial misconduct (grounds two).  (Pet. at 6 & Attach. at 1-4)

## III.   Rule 5 Statement

Respondent asserts one or more of petitioner's ineffective assistance claims are unexhausted and procedurally barred, but otherwise asserts the petition is neither time-barred nor successive.  (Resp't Ans. at 5)

## IV.   Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal

3

law if the state court arrives at a conclusion opposite to that

reached by the Supreme Court of the United States on a question

of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v.

Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  A state court

decision will be an unreasonable application of clearly

established federal law if it correctly identifies the applicable

rule but applies it unreasonably to the facts of the case.

*Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great

deference to a state court's factual findings.  *Hill*, 210 F.3d at

485.  Section 2254(e)(1) provides that a determination of a

factual issue made by a state court shall be presumed to be

correct.  The applicant has the burden of rebutting the

presumption of correctness by clear and convincing evidence.  28

U.S.C. § 2254(e)(1).  Typically, when the Texas Court of Criminal

Appeals denies relief in a state habeas corpus application

without written order, as here, it is an adjudication on the

merits.  *Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir.

2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App.

1997).

4

In this case, the state habeas court entered findings of
fact, which were adopted by the Texas Court of Criminal Appeals.
(State Habeas R., vol. 4, at 721-33)  Petitioner has failed to
rebut the state courts' factual findings by clear and convincing
evidence; thus, this court defers to those findings in addressing
petitioner's claims below.

### 1.   *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the
effective assistance of counsel at trial.  U.S. CONST. amend. VI,
XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  To
establish ineffective assistance of counsel a petitioner must
show (1) that counsel's performance fell below an objective
standard of reasonableness, and (2) that but for counsel's
deficient performance the result of the proceeding would have
been different.  *Strickland*, 466 U.S. at 688.  Both prongs of the
*Strickland* test must be met to demonstrate ineffective
assistance.  *Id.* at 687, 697.

Further, a court must indulge a strong presumption that
counsel's conduct fell within the wide range of reasonable
professional assistance or sound trial strategy.  *Id.* at 668,
688-89.  Judicial scrutiny of counsel's performance must be
highly deferential and every effort must be made to eliminate the

distorting effects of hindsight. *Id.* at 689. Where the state

courts have applied the *Strickland* attorney-performance standard

to factual findings, a federal court will defer to the state

courts' determination unless it appears the decision was:   (1)

contrary to or involved an unreasonable application of

*Strickland*, or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence

in the state court proceedings. *Bell v. Cone*, 535 U.S. 685, 698-

99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82   (5th Cir. 2002).

Petitioner claims trial counsel rendered ineffective

assistance because counsel–

> (A)   did not conduct a proper investigation to go to trial;
>
> (B)   allowed petitioner to go to trial with knowledge of petitioner's mental incompetency;
>
> (C)   did not object to the state's "out right" perjury on the stand;
>
> (D)   did not ask for a lesser included offense instruction when evidence called for it;
>
> (E)   did not seek an independent expert witness when requested to do so by petitioner; and
>
> (F)   did not object to jury conflict.

(Pet. at 6 & Attach. at 1-3)

As a preliminary matter, the court addresses respondent's

assertion that petitioner's claims (A), (C) and (F) are

unexhausted and procedurally barred.   (Resp't Ans. at 5, 9-11)

Applicants seeking habeas corpus relief under § 2254 are required

to exhaust all claims in state court before requesting federal

collateral relief.   28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169

F.3d 295, 302 (5th Cir. 1999).   The exhaustion requirement is

satisfied when the substance of the federal habeas claim has been

fairly presented to the highest court of the state on direct

appeal or in state post-conviction proceedings, even if the state

court fails to address the federal claim, of if the federal claim

is not fairly presented but the state court addresses it sua

sponte.   *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999);

*Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th

Cir. 1982).   A claim is "fairly presented" when the petitioner

asserts the claim in terms so particular as to call to mind a

specific right protected by the Constitution or alleges a pattern

of facts that is well within the mainstream of constitutional

litigation."   *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir.

2005).

In Texas, the highest state court for criminal matters is

the Texas Court of Criminal Appeals.   *Richardson v. Procunier*,

762 F.2d 429, 431-32 (5th Cir. 1985).   Thus, a Texas prisoner may

typically satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas postconviction proceeding. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West Supp. 2012); *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Under claim (A), petitioner alleges counsel was ineffective by not conducting a proper investigation. Specifically, petitioner complains that counsel failed to interview state's witness Arina Sinatra, the apartment manager, before trial and that a reasonable investigation would have "shown that [he] was guilty of (if any[thing]) . . . attempted arson only." (Pet. Attach. at 1) Although petitioner asserted that counsel failed to investigate the case in his state habeas application, he based those claims on other acts and/or omissions by counsel. (State Habeas R. at 11-17, 114-15, 121, 213) Thus, to the extent his first claim exceeds the scope of the claim presented in state court, the claim is unexhausted for purposes of § 2254(b)(1)(A).

Under claim (C), petitioner alleges counsel was ineffective because counsel did not object to the state's "out right perjury on the stand." In the state habeas proceedings, petitioner raised this claim tangentially in the context of a prosecutorial

8

misconduct claim, as opposed to an independent ineffective assistance claim, in a supplemental application filed after the state had already filed its proposed memorandum, findings of fact, and conclusions of law.  (State Habeas R. at 219-20)  The habeas court record does not reflect petitioner's motion for leave to file the supplemental application was granted nor was the claim addressed by the state courts.  (*Id.* at 179-86)  Therefore, the claim was not "fairly presented" in the state courts and is unexhausted for purposes of § 2254(b)(1)(A).  *Johnson v. Cain*, — F.3d —, 2013 WL 1163513, at *2 (5th Cir. Mar. 21, 2013).

Under claim (F), petitioner alleges counsel was ineffective by failing to object to jury conflict.  (Pet. at 6 & Attach. at 3)  Petitioner assumes a conflict based on the jury's inquiry whether they could change the jury foreperson.  Having scoured petitioner's state habeas application and numerous supplemental pleadings, it does not appear that this claim was raised in the state courts and, thus, is unexhausted for purposes § 2254(b)(1)(A).

Under the Texas abuse-of-the-writ doctrine, however, petitioner cannot now return to state court for purposes of exhausting the claims.  TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4.

9

The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *See Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, petitioner's ineffective assistance claims (A), (C) and (F), are procedurally barred from this court's review. *See Smith v. Johnson,* 216 F.3d 521, 523-24 (5th Cir. 2000).

As to the remaining three claims, the state habeas court conducted a hearing by affidavit. Trial counsel, Alex R. Tandy, responded to petitioner's allegations as follows:

> I have read the writ, Defendant has filed, and it is not correct in many aspects. I asked the Defendant had he had any mental problems or ever been accused of being insane or incompetent? He told me, no. He went on to state the convictions he received in Missouri were lawful. He only stated to me that they were so long ago that they should not count as to his current charge.
>
> At no time did he ever mention to me about being shot in the head. His whole focus on the case was that he had a witness who would place him in another county (not Tarrant), at the time of the fire. The witness, emphatically told me that she would not lie for him under any circumstance, and did not wish to come to court for him.
>
> I told her that I could subpoena her, but she told me if I did, she would hurt the Defendant with her testimony. His wife was even reluctant to testify for him.

He complained about his former counsel, prior to
my appearance, but I found out that this Defendant
turned out to be not credible in all aspects.  He never
was able to give me witnesses who would be able to
give me testimony to corroborate the story that he
wished to present.

(State Habeas R. at 123-24)

Based on counsel's affidavit and the state court records,

the habeas court entered the following relevant findings of fact:

4.   The applicant was represented by two prior
     attorneys (the Hon. Jerry Loftin and the Hon. Jack
     Duffy) before retaining Mr. Tandy.

5.   Mr. Tandy met with the applicant to discuss his
     case.

     .  .  .

11.  Mr. Tandy asked the applicant if he had any mental
     problems, or if he had ever been accused of being
     insane or incompetent.

12.  The applicant responded that he did not have
     mental problems and that he had never been accused
     of being insane or incompetent.

13.  The applicant did not tell Mr. Tandy that he had
     been shot in the head.

14.  Mr. Loftin (the applicant's original attorney)
     filed a pretrial motion suggesting that the
     applicant was incompetent and requesting an
     examination.

15.  Dr. Norman examined the applicant and issued a
     report that the applicant had a diagnosable mental
     illness - mild, situational depression and mixed
     personality disorder.

11

16.   Dr. Norman determined that the applicant was
      competent to stand trial.

      . . .

23.   The Tarrant County Medical Examiner's Office
      conducted forensic DNA testing on items recovered
      from the crime scene.

24.   The analyst recovered DNA from a green balloon and
      a yellow balloon found in the apartment attic.

25.   The analyst was unable to obtain a DNA profile
      from the yellow balloon due to an insufficient
      quality and/or quantity of human DNA.

26.   The analyst was able to obtain a partial DNA
      profile from the mouth area of the green balloon.

27.   The analyst concluded that the applicant could not
      be excluded as a contributor to the DNA profile
      obtained from the mouth area of the green balloon.

28.   Forensic DNA evidence does not exculpate the
      applicant from this arson offense.

29.   Mr. Tandy properly did not introduce DNA evidence
      which inculpated the applicant in this arson
      offense.

30.   Mr. Tandy reasonably investigated the applicant's
      case, interviewed witnesses, and fully prepared
      for the applicant's trial.

31.   Mr. Tandy made a strategic decision not to call
      witnesses whose testimony would hurt the
      applicant's defense.

32.   Mr. Tandy properly did not request an instruction
      on the lesser included offense of attempted arson
      because there is no evidence that, if guilty, the
      applicant is only guilty of attempted arson.

. . .

34.   Mr. Tandy provided the applicant with adequate
      representation guaranteed by the Sixth Amendment.

. . .

36.   The following evidence undercuts any likelihood
      that the outcome of this case would have been
      different with another counsel or if Mr. Tandy had
      represented the applicant in another manner:

   a.   The applicant was angry at the
        management of the Shadow Creek
        Apartments where he lived about the
        limited compensation he received
        following a couple of injuries on the
        apartment building stairs.

   b.   On June 7, 2005, residents of the Shadow
        Creek Apartments noticed a strong
        chemical odor in their apartments and
        called 9-1-1.

   c.   Firefighters found two gasoline-filled
        balloons, a charred sock and charred
        insulation material in the attic.

   d.   The applicant's apartment was the only
        apartment with access to the attic.

   e.   Firefighters found a trial of fluid
        drops leading away from the applicant's
        attic access.

   f.   Firefighters found insulation, ceiling
        material and a package for balloons in
        the applicant's trash can.

   g.   The applicant cannot be excluded as a
        contributor to the DNA profile obtained
        from the mouth area of the green
        balloon.

13

      h.    The applicant broke a window to his upstairs apartment to fake a break-in.

      I.    The applicant tried to create an alibi by calling the apartment manager on June 8, 2005, and telling her that he was in Detroit, Michigan.

      j.    Records from American Airlines show that the applicant left DFW International Airport on June 8, 2005.

      k.    A firefighter and a police officer saw the applicant's wallet in his apartment when searching for victims on June 7, 2005.

      l.    On June 8, 2005, the applicant's wallet was missing from the apartment.

      m.    On June 9, 2005, the applicant had his wallet but claimed he had been in Detroit and had not been in his apartment since [the] fire.

37.    Given the evidence showing applicant committed this arson and his failed attempts to create an alibi, there is no reasonable probability that the jury would have reached a different result or verdict with counsel other than Mr. Tandy.

38.    The applicant was not denied effective assistance of trial counsel by Mr. Tandy's representation.

(State Habeas R. at 179-84) (citations to the record omitted)

Based on its factual findings, and applying the *Strickland* standard, the court concluded that counsel adequately and independently investigated the case, fully and adequately prepared for trial, and otherwise functioned as counsel

14

guaranteed by the Sixth Amendment.  (*Id.* at 184-85)  The court further concluded that petitioner had failed to demonstrate a reasonable probability that, but for counsel's alleged acts of misconduct, the result of his trial would have been different. (*Id.* at 185-86)  In turn, the Texas Court of Criminal Appeals denied relief based on the habeas court's findings.  (State Habeas R. at cover)  Petitioner has failed to demonstrate the state courts' adjudication of the claims is contrary to or an unreasonable application of *Strickland*.

This Court is bound by the state courts' factual findings, both implicit and explicit.  Weighing the credibility of counsel and petitioner was the role of the state habeas court.  *Pippin v. Dretke,* 434 F.3d 782, 792 (5th Cir. 2005).  The state habeas court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are "virtually unreviewable" by the federal courts.  *Id.*

Further, petitioner was examined by a court-appointed expert who determined he was competent to stand trial before counsel Tandy was retained, and petitioner apparently showed no signs of mental illness to counsel Tandy to warrant further investigation into the matter.  (Clerk's R. at 26-37)  And, it is not the

15

province of this Court to review decisions reached by state
courts under state law.  The state courts' decision that
petitioner was not entitled to a lesser included offense
instruction is binding on this Court.  *Weeks v. Scott,* 55 F.3d
1059, 1063 (5th Cir. 1995).  Counsel is not ineffective by
failing to make a groundless request for a jury instruction on
the lesser included offense.  *See Koch v. Puckett,* 907 F.2d 524,
527 (5th Cir. 1990).

Moreover, petitioner's complaint that counsel should have
sought out an independent expert witness is vague and unclear.
Petitioner provides no citation to authority or supporting facts,
other than perhaps Exhibit F to his petition, entitled "Motion
for Court to Appoint Independent Examination of DNA Evidence"
filed by one of his prior attorneys, to assist this Court in
determining the precise nature of the claim.  Thus, the claim is
waived as inadequately briefed.  *Trevino v. Johnson,* 168 F.3d
173, 181 n.3 (5th Cir. 2006); *Martin v. Cain,* 246 F.3d 471, 475
n.1 (5th Cir. 2001).  Mere conclusory allegations are
insufficient to raise a constitutional issue in a habeas
proceeding.  *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.
1983).  A court will not raise and discuss legal issues that a

pro se litigant has failed to assert.   *Longoria v. Dretke,* 507

F.3d 898, 901 (5th Cir. 2007).

Finally, as recognized by the state courts, even if

petitioner could establish one or more instances of ineffective

assistance on counsel's part, he was not prejudiced in light of

the overwhelming evidence of his guilt.   Accordingly, he cannot

demonstrate a reasonable probability that, but for counsel's acts

or omissions, the result of his trial would have been different

and he would have been acquitted.   *Harrington v. Richter,* — U.S.

—, 131 S. Ct. 770, 787-88 (2011).

### 2.   *Prosecutorial Misconduct*

Under his second ground, petitioner claims the prosecution

engaged in misconduct by allowing Arina Sinatra, the apartment

manager, to perjure herself on the stand and using the perjured

testimony to mislead the jury in closing argument.[2]   (Pet. at 6 &

Attach. at 4)   More specifically, petitioner appears to complain

of Sinatra's testimony regarding injuries he sustained on the

---

[2]Although not addressed by the state habeas court in its
findings of fact and conclusions of law, unlike his ineffective
assistance claim (C), petitioner specifically raised this claim
in a supplemental pleading in the state habeas proceedings.
(State Habeas R. at 212)   For purposes of this memorandum
opinion, the Court finds the claim was sufficiently exhausted in
the state courts for purposes of § 2254(b)(1).

apartment stairs on August 17, 2004, and January 5, 2005.  (RR, vol. 3, at 94, 115-17, 127-29)  Sinatra testified that petitioner became hostile toward her, especially after the second incident when he "constantly" called her about "his hotel, about his meals, about his car, about his prescriptions," asking her: "Where was the money?  Where was the money."  (*Id.* at 117) Sinatra testified that petitioner filed a lawsuit against the corporation, was paid around $1000 for expenses, and later settled the lawsuit for an unknown amount.  (*Id.* at 94, 115-18, 130)

During closing argument, the prosecutor stated, "we know he's upset at the apartment complex.  I think that's a given.  He doesn't like them.  He doesn't like Ms. Sinatra and he doesn't like not getting his money."  (RR, vol. 4, at 75)  Petitioner argues the prosecutor used Sinatra's perjured testimony to establish that he was upset with Sinatra and the apartment complex and had a motive for setting the fire.  (RR, vol. 3, at 94, 130; RR, vol. 4, at 75; Pet. at 6, Attach. at 4 & Ex. G)

It is well settled that the state is prohibited from allowing a witness to testify at trial when the state knows that the witness is going to perjure him or herself or allows false testimony to go uncorrected when it appears. *Napue v. Illinois,*

18

360 U.S. 264, 269 (1959).  In order for a petitioner to prevail

on a claim that the prosecution knowingly used perjured

testimony, or allowed untrue testimony to go uncorrected, the

petitioner must prove that:  "(1) the testimony was actually

false, (2) the state knew it was false and (3) the testimony was

material." *Faulder v. Johnson,* 81 F.3d 515, 519 (5th Cir. 1996)

(citation omitted).  Testimony is "material" if it could "in any

reasonable likelihood have affected the judgment of the jury."

*Giglio v. United States,* 405 U.S. 150, 154 (1972) (quoting *Napue,*

360 U.S. 264, 271 (1959)).

Petitioner offers no evidence, and the record reveals none,

to indicate that the state acted in collusion with Sinatra to

facilitate false testimony or was aware of any allegedly false

testimony offered by Sinatra.  Moreover, the testimony is not

material and likely had little effect, if any, on the jury's

decision.

### 3. *Evidentiary Hearing*

Petitioner requests an evidentiary hearing, however his

claims were adjudicated on the merits in state court, and he has

failed to overcome the limitation of § 2254(d)(1) on the record

that was before the state court.  *Cullen v. Pinholster,* — U.S. —,

131 S. Ct. 1388, 1398-1401 (2011).  Thus, no evidentiary hearing

19

is warranted.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED May _____ 2 _____, 2013.


_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE